**UNITED STATES DISTRICT COURT**
**For the**
**DISTRICT OF COLUMBIA**

**CASE NO. 1:21-CR-00368(JDB)**

**UNITED STATES OF AMERICA**
    **Plaintiff,**

**vs.**

**JODY LYNN TAGARIS,**
    **Defendant**
_____/

**DEFENDANT'S SENTENCING MEMORANDUM**

**COMES NOW**, the Defendant, JODY LYNN TAGARIS, by and through her undersigned counsel, pursuant to Fed. R. Crim. P., 32 and 18 USC § 3553(a) and respectfully submits the following Sentencing Memorandum to aid the Court at sentencing. The Defendant hereby notifies the Court that she has received and reviewed the Presentence Investigation. The Defendant respectfully requests that the Court impose a sentence of probation with community service and a fine to account for:

1.  Her lack of preparation or planning prior to January 6, 2021, to be part of the Capitol breach and her peaceful, non-destructive, and non-violent behavior that day, both outside and inside the Capitol building.

2.  Ms. Tagaris comes before this Court having pled guilty on December 1, 2021, to Count 3 of the Information charging her with a violation of 40 USC § 5104(e)(2)(c). Report.

3.  Pursuant to the decision in *United States v. Booker*, 543 U.S. 220 (2005), Ms. Tagaris respectfully requests this Court to impose a sentence that is "sufficient but not greater than necessary to comply with" the goals of sentencing set forth in 18 U.S.C. §

1

3553(a). The "nature and circumstances of Ms. Tagaris' offense as a Class B Misdemeanor provide for a maximum term of imprisonment of six months. 40 USC § 5104(e)(2)(C) and 40 USC § 5109(b).

4.  Pursuant to USSG §1B1.9, the US Sentencing Guidelines do not apply to any count of conviction that is a Class B or C misdemeanor or an infraction.

5.  Ms. Tagaris respectfully requests the imposition of a sentence of twelve (12) months' probation with community service and a fine.

6.  This sentence is "sufficient but not greater than necessary" to address the sentencing factors and goals set forth in Title 18 U.S.C. § 3553(a). Under the facts of this case, such a sentence will protect the public and provide just punishment and afford adequate deterrence.

### The Trip to the Capitol on January 6, 2021

Ms. Tagaris went to Washington to show support for the soon to be former President by attending his rally and other rallies scheduled for January 6, 2021, at the Ellipse on the Mall. Importantly, Ms. Tagaris was fixated on the process, not the result of the election. The emphasis on the process and not the result is particularly important because it shows that Ms. Tagaris values the Constitution and the foundation of our government.

Ms. Tagaris traveled to Washington and at no time did she ever think she was going to the Capitol, let alone inside the Capitol grounds. Not until Donald Trump's speech, did she have any intention of going anywhere other than the Ellipse area.

As the day unfolded, she never planned or envisioned entering the U.S. Capitol. That is until Donald Trump invited everyone to March to the Capitol building. Ms. Tagaris followed the large crowd to the Capitol with only the intention of having her voice join the

thousands of other peaceful protesters. Now, after seeing what really happened that day by watching films from various sources, Ms. Tagaris is ashamed to be a part of the events that took place that day. Although Ms. Tagaris took no part in the violence that ensued, she is appalled to be associated with the events that transpired on January 6, 2021.

### Ms. Tagaris' Activities Inside and Outside the Capitol

Officers were able to hold off the excited crowd for approximately an hour, but just after 2:13 p.m., the Capitol was breached through a broken window adjacent to the Senate Wing Doors located on the northwest side of the building. The breach spurred the evacuation of Members of Congress and the Vice President. Thirty minutes later, the Senate Wing doors were penetrated by the crowd, pushing the Capitol officers back into the inside corridor as they tried to prevent further intrusion. Ms. Tagaris was not in the first wave of hundreds of protesters. She could not see what was occurring ahead of her prior to entering the building and had no idea of the violence in other parts of the Capitol. Although we now know through video recordings and personal accounts of law enforcement that many people in the crowd were violent and pushing officers, Ms. Tagaris had no part in the violence, rather she carefully observed the situation in her immediate surroundings and acted with decency.

As Ms. Tagaris entered the Capitol and simply went to a Senate meeting room. She then followed the instructions of a capitol police officer who directed her to leave the building and took a self-photograph otherwise known as a "selfie". She subsequently posted the photo of herself in the Capitol Building window on Facebook and wrote "The Capital…back at hotel safe! Got tear gassed but okay!"

## LEGAL STANDARD

### I.   FACTORS TO BE CONSIDERED PURSUANT TO 18 U.S.C. § 3553(a)

Section 3553 of Title 18 U.S.C. enumerates certain factors a district court is to consider when sentencing Ms. Tagaris who has been convicted of a federal offense. Primarily, the court shall consider the nature and circumstances of the offense and the history and characteristics of Ms. Tagaris. *See* Title 18 U.S.C. § 3553(a). The court shall also consider the need for the sentence imposed to reflect the seriousness of the offence; promote respect for the law and provide just punishment; afford adequate deterrence to criminal conduct; protect the public from further crimes of Ms. Tagaris; and provide Ms. Tagaris with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *Id.* at § 3553(a)(2)(A-D). § 3553 further sets forth the factors the court must consider in fulfilling this provision:

1. Nature and circumstances of the offense and the history and characteristics of the offense and the history and characteristics of Ms. Tagaris

2. The need for the sentence imposed;

3. The kinds of sentences available;

4. The kinds of sentences and sentencing range;

5. Any pertinent policy statements issues by the sentencing commission;

6. The need to avoid unwarranted sentencing disparities among Ms. Tagaris and others with similar records who have been found guilty of similar conduct; and

7. The need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1-7).

At sentencing a district court must impose a sentence that is "sufficient but not greater than necessary" in light of the factors identified in § 3553(a). *United States v. Mendoza-Mendoza*, 597 F.3d 212,216 (4th Cir. 2010) (citing *Kimborough v. United States*, 552 U.S. 85, 111 (2007) (quoting § 3553(a))). Specific characteristics of individual defendants, which district courts were once prohibited or discouraged from considering may now be considered. *See Rita v. United States*, 127 S. Ct. 2456, 2473 (2007) (Matters such as age, education mental or emotional condition, medical condition (including drug or alcohol addiction), employment history, lack of guidance as a youth, family ties, or military, civic, charitable, or public service are not ordinarily considered under the Guidelines ... These are, however, matters that § 3553(a) authorizes the sentencing judge to consider."); *United States v. Lazenby*, 439 F.3d 928, 933 (8th Cir. 2006) ("The other factors cited by the district court, though discouraged or prohibited departure factors under the mandatory guidelines, may also be considered in applying the § 3553(a) factors under *Booker*.").

## II.   NATURE AND CIRCUMSTANCES OF THE OFFENSE AND HISTORY AND CHARACTERISTICS OF MS. TAGARIS

Ms. Tagaris entered the Capitol through a window that was already broken providing free access to the building. At no time did Ms. Tagaris use violence or advocate anyone else to use violence against the Capitol police. Compared to many other Class B misdemeanor cases that have been filed in this Court. Ms. Tagaris' conduct is as the bottom of the scale. First, no evidence exists that Ms. Tagaris' entry into the Capitol was pre-planned or coordinated with anyone else, including any extremist groups. Her intention was to attend the rally, which did not include going to the Capitol. Second, the defense is not aware of any evidence that Ms. Tagaris incited any others to commit acts of violence or destruction. Third, the defense is not aware of any evidence that Ms. Tagaris engaged in

any violence or questionable conduct towards law enforcement. Fourth, the defense is not aware of any evidence that Ms. Tagaris destroyed or stole any property from the Capitol. Fifth, it appears that Ms. Tagaris walked down various hallways, the Crypt of the Capitol, and the Rotunda before sitting down at a conference table. Prior to leaving the Capitol, she took a "selfie". Ms. Tagaris did not enter into any personal offices in the Capital or tried to enter onto the floor of the Senate or House Chambers.

To her credit, Ms. Tagaris cooperated with law enforcement by agreeing to allow law enforcement agents to review any social media accounts operated by the defendant for statements and postings in and around January 6, 2021, and consented to an interview regarding the events in and around January 6, 2021.

Ms. Tagaris did not come to Washington with the intention of subverting democracy. She came to attend a rally of then President Trump and to show support for him. After Trump's rally, she walked with the crowd to the Capitol. Although she unlawfully walked into the Capitol and admitted her wrongdoing to the FBI agents in her interview, she did not witness protesters beating police officers, spraying gas in their faces, screaming obscenities, and destroying property.

The government concedes that Ms. Tagaris committed no acts of violence. She entered the U.S. Capitol through a broken window adjacent to the Senate Wing Door on January 6. Tagaris then entered Senate Breakout Room S139, where she sat down and remained at a conference table until she was asked to evacuate by Washington Metropolitan Police. See Pre-Sentence Investigation.

This has been a long road for Ms. Tagaris. As a 67-year-old retired widow and despite a troubled upbringing, she has been a law-abiding citizen residing in Florida since 1993.

Ms. Tagaris was politically active in the early 2000 but has since settled for a peaceful retirement, which is part of her "history and characteristics." 18 U.S.C. § 3553(a). Her unplanned entry of a restricted building for the purpose of demonstrating and subsequently being caught up in the fervor of a "crowd mentality", is part of the "nature and circumstance of the offense." *Id.* Ms. Tagaris has taken full responsibility for her actions and has demonstrated great remorse.

As the PSR correctly states conveyed Ms. Tagaris' childhood was not easy. Her father left when she was born, and she was reared by her single mother. An elderly German couple cared for her until she was in kindergarten. Around that time, her mother married Mr. Rood and the family relocated constantly because of Mr. Rood's military service. Both of Ms. Tagaris' parents were drinkers. Her mother was abusive - physically, emotionally, and sexually. The abuse started during her early childhood and lasted until her high school years, which was when she left home. Mr. Rood was unaware of the abuse inflicted upon Ms. Tagaris at the hands of her mother. Ms. Tagaris moved to Nebraska with an older stepbrother and his wife. Eventually she moved with her biological father; however, her stepmother didn't want her living with them and created constant conflict in the home. Ms. Tagaris' father was abusive towards her stepmother and their children. As soon as she completed the school year, she left her father's residence and relocated with a friend to Portland, Oregon. However, because the Ms. Tagaris was underage, she was reported as a runaway and upon her apprehension she was sent to reform school for about a month. Neither biological parent wanted Ms. Tagaris to reside with them, which is why she had to stay at reform school. Eventually, her father welcomed her, and she returned to Idaho with her father. Her father continued to be emotionally and physically abusive towards her

stepmother and their children. The same year, following an altercation between her father and stepmother, Ms. Tagaris moved back in with her mother. While living with her mother, there was an incident involving firearms and the Ms. Tagaris, fearing for her life while locked inside a camper with her younger stepbrother, subsequently moved back to Massachusetts and graduated from Attleboro High School. When Ms. Tagaris graduated from high school, she left home and moved to Cape Cod for to attend community college.

Ms. Tagaris has two siblings as Lex Archevarria, age 70, resident of Florida, and Celinda Kaye, age 68, resident of Massachusetts. She maintains an amicable relationship with her siblings. Ms. Tagaris has been a law-abiding citizen residing in Florida since 1993. She has been twice widowed and has settled for a peaceful retirement in her later years.

Ms. Tagaris does not seek to minimize the harm caused by her behavior by the explanation in this Sentencing Memorandum. Nonetheless, in determining what punishment is warranted, this Court should not lose sight that she did no harm, intended no harm, and regrets that she went inside the Capitol. When this Court takes a step back and looks at the entire picture of Ms. Tagaris' sometimes troubled life, she has demonstrated an ability to overcome adversity at every turn. Her law-abiding life and her post arrest behavior show that she is capable of being a productive citizen and the Court can rely on that as a basis to sentence her to term of probation considering the 3553 factors.

## III.   NEED FOR SENTENCE IMPOSED

1. General deterrence -18 U.S.C. §3553(a)(2)(B)-to adequately deter others from criminal conduct.

The purpose of sentencing includes punishment, rehabilitation, general deterrence, specific deterrence, and incapacitation. In this case, there appears no need for incapacitation, specific deterrence, or rehabilitation. The public will be adequately deterred

by the sentences meted out against those who perpetrated the violence and mayhem at the Capitol and the negative publicity and collateral consequences attendant to even a misdemeanor conviction for those involved. Those who would not be deterred by these consequences are likely not deterrable.

### A. Specific deterrence -18 TJ.S.C. § 3553(a)(2)(C) - to protect the public from further crimes of Ms. Tagaris.

Ms. Tagaris' likelihood of recidivism is very low. She has cooperated fully with law enforcement and turned over evidence voluntarily. She accepted the first plea offer tendered with no hesitation. Her acceptance of responsibility was complete and without reservation. She has never tried to minimize his behavior. Given Ms. Tagaris' age (67), and other issues consistent with what is mentioned above, the likelihood of Ms. Tagaris' ever re-offending is as close to zero as one might come. A punishment of any jail time in this case is going to have the exact opposite effect than what is in the interest of justice. The alternatives to incarceration make financial sense, conserve bed space for individuals from which society would need greater protection and would serve the ends of justice.

### B. Sentences Available

The sentencing guidelines do not apply in this case. *See* PSR, paragraph 27. The Court should not consider any conduct that Ms. Tagaris did not plead guilty to. Ms. Tagaris asks that the Court impose a 12 month probationary sentence. In the alternative, he asks that the Court consider a non-custodial sentence with a restriction that she remain on her property except for work. The Court should impose a fine in all cases, except where the Defendant establishes that she is unable to pay and is not likely to have able to pay in the future. See U.S.S.G §5El.2.(a) A review of paragraph 64 of the PSR clearly indicates that Ms. Tagaris has the present ability to pay a fine.

## C.  The need to avoid unwarranted sentence disparities

If this Court were to impose a sentence greater than a probationary term, community service, fine and restitution, it would create an unwarranted sentencing disparity compared to similar cases that have already gone to sentencing in this Court. The following cases are a sampling where a misdemeanor was charged and pled to and resulted in no incarceration:

- *United States v. Anna Morgan-Lloyd*, 21-cr-00164 (RCL) (Jun. 28, 2021) (sentenced to probation);]

- *United States v. Danielle Doyle*, 21-cr-00324 (TNM)(Oct. 1, 2021) (sentenced to probation even though she entered through a broken window and yelled at police officers);

- *United States v. Valerie Ehrke*, 21-cr-00097 (PLF) (Sept.17, 2021) (sentenced to probation);

- *United States v. Jessica Bustle and Joshua Bustle*, 21-cr-00238( TFH),E CF Nos. 42 & 44 (sentenced to supervised release with home confinement even though Ms. Bustle 1) posted on social media that Mike Pence was a traitor, 2) denied media accounts of violence were accurate, minimized the conduct of all of the rioters, 3) called for a revolution even after the events of January 6, 4) encouraged the rioters to be proud of their actions, and 5) minimized the impact of that day on lawmakers and democracy. *See United States v. Jessica and Joshua Bustle*, 21-00238. (TFH). Judge Hogan imposed a probationary sentence with a short period of home confinement for Ms. Bustle. The government recommended probation in this case.

- *United States v. Andrew Bennett*, Crim. No. 21-227 (JEB)(sentenced to three months home confinement and two years' probation). According to the government, who recommended probation with a short term of home confinement, Mr. Bennett espoused conspiracy theories about the election, was an admirer, and boasted about his conduct.

There is nothing materially different about Ms. Tagaris or her conduct that would justify a sentence of incarceration and disparate treatment. Ms. Tagaris was far more cooperative with law enforcement, did not attempt to hide any evidence, in fact produced evidence and has not publicly blamed another group for the violence that day. All told, the facts of the offense conduct and characteristics of others who garnered incarceration were starkly different than Ms. Tagaris's conduct and characteristics. Ms. Tagaris' actions fall on the low-end of the spectrum that day and his "culpability appears to be minimal in contrast with rioters who destroyed or stole government property and assaulted or threatened the law enforcement officers on that date.

## CONCLUSION

Considering all the applicable factors the Court will consider, Ms. Tagaris respectfully moves this court to impose a sentence of 12 months' probation with community service hours and a fine. This sentence is "sufficient but not greater than necessary as required by 13 U.S.C. §3553(a). For the reasons stated in this memorandum, the Defendant respectfully requests this Court to impose a sentence in a manner that incorporates a period of probation and a fine in lieu of incarceration.

Respectfully submitted,

JEFF T. GORMAN LAW OFFICES

By: _____
Jeff T. Gorman
Florida Bar No.: 538183
47 SE Ocean Boulevard
Stuart, Florida 34994
Phone: 772.220.4000
Facsimile: 772.220.4114


## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 24 day of May, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: _____
Jeff T. Gorman
Florida Bar No.: 538183

**SERVICE LIST**

**UNITED STATES vs. JODY LYNN TAGARIS**
**Case No.: 1:21-CR-00368(JDB)**
**United States District Court For the  District Of Columbia**

Jeff T. Gorman
Jeff T. Gorman Law Offices
Florida Bar No.: 359970
47 S.E. Ocean Blvd.
Stuart, FL 34994
Tel: (772) 888-8888
Fax: (772) 380-4038
E-Mail: jgorman@jgormanlaw.com
Notices of Electronic Filing

Assistant U.S. Attorney
David T. Henek
555 4th Street N.W.
Washington, DC 20530
Tel: (202) 252-7825
E-Mail: david.t.henek@usdoj.gov
Notices of Electronic Filing

13